# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

TRICIA GETER PINDER,

       Plaintiff,                    CASE NO.: _____

       v.

MICHAEL VON ZAMFT, Miami Dade Assistant
State Attorney, in his individual and official capacity;
STEPHEN MITCHELL, Miami Dade Assistant State
Attorney, in his individual and official capacity;
UNICE COOPER, Miami Dade State Attorney's Office
Investigator, in his individual and official capacity
RODERICK PASSMORE, Miami Dade State Attorney's
Office Investigator, in his individual and official capacity;
individually; KEVIN RODRIGUEZ, Miami Dade Police
Officer, in his individual and official capacity;
STATE  OF FLORIDA; and
MIAMI-DADE COUNTY,

       Defendants.

_____/

## **COMPLAINT**

Plaintiff, TRICIA GETER PINDER ("Ms. Pinder" or "Plaintiff"), by and through her undersigned counsel, hereby files this Complaint against Defendants MICHAEL VON ZAMFT ("Von Zamft"), STEPHEN MITCHELL ("Mitchell"), EUNICE COOPER ("Cooper"), RODERICK PASSMORE ("Passmore"), KEVIN RODRIGUEZ ("Rodriguez"), STATE OF FLORIDA ("MDSAO"), and MIAMI-DADE COUNTY ("County") (collectively, "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interest, costs, and attorneys' fees.

2.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

3.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they form part of the same case or controversy.

4.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district, and all Defendants reside or have their principal place of business in this district.

5.     All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute Chapter 768.

## PARTIES

6.     Plaintiff Tricia Geter Pinder is a natural person and, at all times relevant to this Complaint, was a resident of Miami, Miami-Dade County, Florida, and is otherwise *sui juris*.

7.     Defendant Michael Von Zamft is a natural person and, at all times relevant to this Complaint, was employed as an Assistant State Attorney by the State of Florida for the Miami-Dade State Attorney's Office. Upon information and belief, Von Zamft is a resident of Miami-

Dade County, Florida, is over eighteen (18) years of age and is otherwise sui juris.. At all relevant times, Von Zamft was acting under color of state law and is sued in his individual capacity.

8.     Defendant Stephen Mitchell is a natural person and, at all times relevant to this Complaint, was employed as an Assistant State Attorney for the Miami-Dade State Attorney's Office. Upon information and belief, Mitchell is a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise sui juris.. At all relevant times, Mitchell was acting under color of state law and is sued in his individual capacity.

9.     Defendant Eunice Cooper is a natural person and, at all times relevant to this Complaint, was employed as an investigator for the Miami-Dade State Attorney's Office. Upon information and belief, Cooper is a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise sui juris. At all relevant times, Cooper was acting under color of state law and is sued in his individual capacity.

10.     Defendant Roderick Passmore is a natural person and, at all times relevant to this Complaint, was employed as an investigator for the Miami-Dade State Attorney's Office. Upon information and belief, Passmore is a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise sui juris. At all relevant times, Passmore was acting under color of state law and is sued in his individual capacity.

11.     Defendant Kevin Rodriguez is a natural person and, at all times relevant to this Complaint, was employed as a Detective with the Miami-Dade Police Department. Upon information and belief, Rodriguez is a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise sui juris. At all relevant times, Rodriguez was acting under color of state law and is sued in his individual capacity.

12.     Defendant State of Florida is a governmental entity controlling Miami-Dade State Attorney's Office (MDSO) organized and existing under the laws of the State of Florida. The MDSAO is responsible for the supervision, training, and employment of its Assistant State Attorneys and investigators, including Defendants Von Zamft, Mitchell, Cooper, and Passmore.

13.     Defendant Miami-Dade County is a governmental entity organized and existing under the laws of the State of Florida. The  County controls Miami-Dade Police Department and is responsible for the supervision, training, and employment of its police officers, including Defendant Rodriguez.

## FACTUAL ALLEGATIONS

14.     Plaintiff Tricia Geter Pinder had a prior relationship with Corey Smith from 1993 to 1998. Following Smith's arrest in 1998, Ms. Pinder was approached by Miami-Dade prosecutors to serve as a witness in the criminal prosecution of Smith for multiple murders.

15.     In or around 2000, Defendant Von Zamft contacted Ms. Pinder in connection with the prosecution of Smith. Von Zamft initially deceived Ms. Pinder to secure her cooperation by playing a recording of Smith and falsely telling her that Smith wanted her dead, when in fact no such threat existed.

16.     Ms. Pinder's testimony was instrumental in securing Smith's conviction in 2004. Smith was sentenced to death for multiple murders connected with the "John Does" gang in Liberty City, Miami.

17.     During this period, Defendant Rodriguez served as what was described in court proceedings as Ms. Pinder's "handler," controlling her interactions with the prosecution team and managing the benefits she received in exchange for her cooperation.

18.     In 2017, the Florida Supreme Court granted Smith a new sentencing hearing after finding that the state's death penalty process was unconstitutional because it didn't require unanimous jury decisions.

19.     Beginning in late 2022 and continuing through March 5, 2024, Ms. Pinder was subjected to a campaign of harassment, intimidation, and threats by Defendants Von Zamft, Mitchell, and other agents of the Miami-Dade State Attorney's Office in an effort to secure her testimony in Smith's resentencing proceeding.

20.     Specifically, members of the Miami-Dade State Attorney's Office, including Defendant Von Zamft, approached Ms. Pinder to testify and informed her that her failure to testify as the SAO demanded could result in her death.

21.     To coerce Ms. Pinder into testifying "correctly," Defendant Von Zamft and others (i) conspired with dangerous felons to threaten Ms. Pinder's life, (ii) told Ms. Pinder that convicted murderers would come after her, and (iii) threatened to jail and prosecute Ms. Pinder, despite her having committed no criminal offenses.

22.     On March 6, 2024, Miami-Dade Circuit Court Judge Andrea Ricker Wolfson issued an order disqualifying Defendants Von Zamft and Mitchell from the Corey Smith case due to serious misconduct related to witness testimony manipulation. In the order, Judge Wolfson specifically noted: "During the hearing, it became apparent there was a serious issue regarding possible witness testimony manipulation by the Assistant State Attorneys on this case — not only in the past, but also in the present." *See attached as* **Exhibit A.**

23.     On or about August 3, 2022, Defendant Von Zamft engaged in a recorded jail call with Latravis Gallashaw, a convicted murderer who was serving as a state witness in Smith's case, during which they discussed the potential testimony of Ms. Pinder.

24.     During this recorded call, which was eventually discovered and presented in court proceedings, Defendant Von Zamft made the following statement regarding Ms. Pinder: "If I call her and she refuses, then I will find a way to make her unavailable, and then I can read her whole testimony." *Id*.

25.     When Gallashaw asked Von Zamft, "You would want to do that?" Von Zamft replied, "No, I don't want to do it. I'd rather she testified and did a good job. But can I count on it? No." *Id*.

26.     This conversation directly corroborated Ms. Pinder's testimony that Von Zamft had previously told her in person that if she were dead, he would simply read her testimony into the record.

27.     The threat to make Ms. Pinder "unavailable" was particularly menacing and terrifying given the context in which it was made—a conversation with a convicted murderer in a case that involved witness elimination, and in a situation where Von Zamft had significant power and influence over incarcerated witnesses who might be motivated to harm Ms. Pinder in exchange for leniency.

28.     Adding to the threatening nature of this exchange, Defendant Von Zamft also discussed his attempts to arrange for Gallashaw to meet in a prison courtyard with Demetrius Jones (another witness) and William Brown (a witness in another capital case being prosecuted

by Von Zamft), which further evidences Von Zamft's pattern of improperly influencing and coordinating witnesses.

29.     In January 2023, witness Anthony Fail signed an affidavit confirming allegations that witnesses, including Ms. Pinder, were brought to the Miami Police Department for the purpose of coordinating their testimonies, with prosecutors participating in these meetings.

30.     Upon learning of Fail's affidavit, rather than investigating the substance of his claims, Defendant Von Zamft dispatched Defendants Cooper and Passmore to interview Fail. Following this interview conducted by Cooper and Passmore, Fail changed his story.

31.     During court proceedings, it was revealed that instead of investigating the merits of Fail's claims about witness manipulation, Defendant Von Zamft "opened an investigation for witness tampering into the defendant's investigative team," demonstrating his intent to intimidate witnesses who might corroborate Ms. Pinder's allegations.

32.     During this same period, Defendant Rodriguez testified in court proceedings in a manner deliberately designed to discredit Ms. Pinder, characterizing her as "seemingly trying to continuously take advantage of her value to this prosecution, wavering back and forth from 'Team Michael' and acting on and off as if she was afraid of the Defendant and in need of relocation." This testimony was part of a coordinated effort to undermine Ms. Pinder's credibility regarding the threats and coercion she experienced.

33.     Ms. Pinder learned about the recorded conversation in early 2024, which amplified her fear for her safety, particularly in light of threatening messages she had already been receiving.

34.     With respect to Von Zamft's recorded statement about making Ms. Pinder "unavailable," Judge Wolfson stated in her order: "To be clear, this court does not believe that Mr. Von Zamft was sending a cryptic message to Mr. Gallashaw to eliminate Ms. Geter. However, reasonable minds may reach a different conclusion based on the totality of the circumstances in this case." *Id*.

35.     Judge Wolfson further found that the statement violated Florida Statute § 90.804(1), which prohibits prosecutors from intentionally manufacturing the unavailability of potentially adverse witnesses: "However, a declarant is not unavailable as a witness if such exemption, refusal, claim of lack of memory, inability to be present, or absence is due to the procurement or wrongdoing of the party who is the proponent of his or her statement in preventing the witness from attending or testifying." *Id*.

36.     Defendant Mitchell was disqualified because he "emphatically argued that there has been no unethical conduct, which indicates he shares Von Zamft's prosecutorial philosophy of winning at all costs." *Id*.

37.     As a direct and proximate result of the Defendants' threats, intimidation, and misconduct, Ms. Pinder has suffered severe emotional distress, including but not limited to severe anxiety and fear for her life, paranoia about her safety that has severely limited her ability to leave her home, post-traumatic stress disorder, recurring nightmares about the threats, depression, insomnia and loss of sleep, physical symptoms including seizures, severe financial hardship due to inability to work, ongoing need for psychological therapy and treatment.

38.     The physical and psychological trauma inflicted upon Ms. Pinder by the Defendants' actions was severe, persistent, and continues to this day, fundamentally altering her ability to function normally in her daily life.

39.     The conduct of Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez fell far outside their legitimate investigative functions and violated clearly established statutory and constitutional rights of Ms. Pinder.

**COUNT I**
**DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**AGAINST DEFENDANTS VON ZAMFT, MITCHELL, COOPER, PASSMORE,**
**AND RODRIGUEZ**

40.     Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 39 above.

41.     This claim is brought pursuant to 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

42.     At all times relevant hereto, Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez were acting under color of state law in their capacity as employees of the Miami-Dade State Attorney's Office and Miami-Dade Police Department.

43.     At all times relevant hereto, Defendants Von Zamft and Mitchell were acting outside the scope of their prosecutorial immunity by engaging in investigative and administrative functions that were not intimately associated with the judicial phase of the criminal process, in conjunction and connection with their actions with Defendants Cooper, Passmore, and Rodriguez.

44.     Defendant Von Zamft violated Ms. Pinder's First Amendment right to free speech by attempting to coerce and intimidate her testimony, threatening her with adverse consequences

if she refused to testify in the specific manner demanded, and explicitly threatening to make her "unavailable" as a witness if she refused to comply with his demands.

45.     Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez violated Ms. Pinder's Fourth Amendment right to be free from unreasonable seizures by threatening her liberty through explicit statements about making her "unavailable" and statements indicating she would be jailed and prosecuted despite having committed no crime.

46.     Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez violated Ms. Pinder's Fourteenth Amendment right to due process by engaging in shocking and egregious misconduct that violated her procedural and substantive due process rights, including threats of jail and prosecution despite no criminal conduct, threats to her life and safety, state-created danger doctrine, conspiring with dangerous convicted felons to threaten her, and creating a sustained campaign of intimidation and harassment. In doing so, Defendants also committed Conspiracy to violate civil rights.

47.     Defendants acted with malice and with reckless disregard for Ms. Pinder's clearly established constitutional rights when they:

a. Threatened to make Ms. Pinder "unavailable" if she did not testify;

b. Conspired with convicted murderers to threaten Ms. Pinder's life;

c. Told Ms. Pinder that convicted murderers would come after her;

d. Stated that they could rely on her prior testimony if she were dead;

e. Threatened to jail and prosecute Ms. Pinder despite her having committed no criminal offenses;

f. Deployed investigators (Cooper and Passmore) to pressure and discredit a witness (Anthony Fail) who corroborated Ms. Pinder's claims about witness manipulation;

g. Testified (Rodriguez) to undermine Ms. Pinder's credibility by characterizing her as opportunistic and dishonest; and

h. Engaged in a continuing pattern of intimidation and harassment from 2022 through early 2024.

48.     As a direct and proximate result of the violations of her constitutional rights by Defendants, Ms. Pinder suffered severe and continuing damages, including but not limited to:

a. Severe emotional distress;

b. Mental anguish;

c. Post-Traumatic Stress Disorder;

d. Loss of sleep;

e. Depression and anxiety;

f. Physical manifestations of psychological trauma including seizures;

g. Loss of income due to inability to work; and

h. Other psychological trauma requiring ongoing treatment.

49.     The actions of Defendants were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez for compensatory damages; punitive damages, reasonable attorney's fees and costs incurred in this action pursuant to 42 U.S.C. § 1988 and such other and further relief as the Court deems just and proper.

## COUNT II
## CIVIL ASSAULT – STATE TORT
## AGAINST DEFENDANTS VON ZAMFT, MITCHELL, COOPER, PASSMORE, AND RODRIGUEZ

50.     Plaintiff hereby realleges and incorporates paragraphs 1 through 39 as if fully set forth herein

51.     This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

52.     Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez, with the intention of assaulting Mr. Van Jr., were unreasonable, unwarranted, without probable cause and without legal authority.

53.     Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez engaged in assault against the Plaintiff by:

a. Deliberately threatening Ms. Pinder's life by stating they would make her "unavailable" to testify;

b. Making these threats in conversation with a convicted murderer in a case involving witness elimination;

c. Telling Ms. Pinder directly that if she were dead, they could simply read her prior testimony;

d. Conspiring with dangerous felons to threaten Ms. Pinder's life;

e. Threatening to jail and prosecute Ms. Pinder despite her having committed no crimes;

54.     As a direct and proximate result of Defendants' assault, Ms. Pinder has suffered severe and continuing emotional distress including but not limited to:

    a. Severe paranoia about her safety;

    b. Recurring nightmares about the threats;

    c. Physical manifestations of trauma including seizures;

    d. Inability to leave her home due to fear;

    e. Ongoing psychological trauma requiring therapy; and

    f. Other severe emotional and psychological damages.

55.     The severity of Ms. Pinder's emotional distress is evidenced by the physical manifestations of her psychological trauma, including seizures, and the dramatic deterioration of her personal and professional life, including her inability to work since learning of the threats against her.

56.     The emotional distress inflicted by the Defendants was severe, lasting, and has fundamentally altered every aspect of Ms. Pinder's life.

WHEREFORE, Plaintiff demands judgment against Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez for compensatory damages, punitive damages, costs, and any other relief this Court deems just and proper.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST DEFENDANTS VON ZAMFT, MITCHELL, COOPER, PASSMORE,**
**AND RODRIGUEZ**

57.     Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

58.     Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez engaged in extreme and outrageous conduct beyond all bounds of decency in civilized society by:

a.  Deliberately threatening Ms. Pinder's life by stating they would make her "unavailable" to testify;

b.  Making these threats in conversation with a convicted murderer in a case involving witness elimination;

c.  Telling Ms. Pinder directly that if she were dead, they could simply read her prior testimony;

d.  Conspiring with dangerous felons to threaten Ms. Pinder's life;

e.  Threatening to jail and prosecute Ms. Pinder despite her having committed no crimes;

f.  Using their positions of authority as prosecutors and law enforcement officers to inflict maximum psychological trauma;

g.  Deploying investigators (Cooper and Passmore) to intimidate and discredit a witness who supported Ms. Pinder's claims; and

h.  Providing testimony (Rodriguez) to portray Ms. Pinder as manipulative and dishonest in order to undermine her credibility regarding the threats she received.

59.     Defendants' conduct in threatening to "make unavailable" a witness while speaking with a convicted murderer who was involved in a case concerning witness elimination was especially heinous and calculated to cause severe emotional distress.

60.     Defendants engaged in this conduct intentionally and/or recklessly, knowing that severe emotional distress was certain or substantially certain to result.

61.     No reasonable person could be expected to endure threats to their life from government officials in positions of authority, especially when those threats involve coordination with violent criminals.

62.     As a direct and proximate result of Defendants' extreme and outrageous conduct, Ms. Pinder has suffered severe and continuing emotional distress including but not limited to:

>    a. Severe paranoia about her safety;
>
>    b. Recurring nightmares about the threats;
>
>    c. Physical manifestations of trauma including seizures;
>
>    d. Inability to leave her home due to fear;
>
>    e. Ongoing psychological trauma requiring therapy; and
>
>    f. Other severe emotional and psychological damages.

63.     The severity of Ms. Pinder's emotional distress is evidenced by the physical manifestations of her psychological trauma, including seizures, and the dramatic deterioration of her personal and professional life, including her inability to work since learning of the threats against her.

64.     The emotional distress inflicted by the Defendants was severe, lasting, and has fundamentally altered every aspect of Ms. Pinder's life.

WHEREFORE, Plaintiff demands judgment against Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez for compensatory damages, punitive damages, costs, and any other relief this Court deems just and proper.

### COUNT IV
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### AGAINST DEFENDANTS VON ZAMFT, MITCHELL, COOPER, PASSMORE, AND RODRIGUEZ

65.     Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

66.     Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez owed Ms. Pinder a duty of care as officers of the court and law enforcement officials to refrain from causing her unwarranted emotional harm during her participation as a witness in the criminal justice process.

67.     Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez breached this duty by:

a. Recklessly discussing making Ms. Pinder "unavailable" with a convicted murderer;

b. Negligently allowing their statements about Ms. Pinder to be recorded in a jail call;

c. Failing to consider the foreseeable emotional impact of their threats on Ms. Pinder when she learned of them;

    d. Conducting improper witness intimidation through Cooper and Passmore's questioning of Anthony Fail after he corroborated Ms. Pinder's claims;

    e. Providing damaging testimony (Rodriguez) that characterized Ms. Pinder as manipulative and dishonest; and

    f. Failing to take reasonable steps to ensure witness safety and well-being.

    g. Other ways to be discovered pending discovery

68.    As a direct and proximate result of Defendants' breach of duty, Ms. Pinder suffered immediate and continuing emotional distress manifesting in physical injuries including but not limited to:

    a.  Physical manifestations of anxiety including seizures,

    b.  difficulty breathing, and sleep disturbances;

    c.  b. Post-traumatic stress disorder;

    d.  c. Depression and severe anxiety.

69.    Defendants' conduct caused Ms. Pinder to suffer severe emotional distress that no reasonable person should be expected to endure.

70.    Ms. Pinder has required ongoing psychological therapy and treatment as a direct result of Defendants' actions.

71.    The emotional distress suffered by Ms. Pinder was reasonably foreseeable by Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez for compensatory damages, costs, and any other relief this Court deems just and proper.

**COUNT V**
**ABUSE OF PROCESS**
**AGAINST DEFENDANTS VON ZAMFT,**
**MITCHELL, COOPER, AND PASSMORE**

72.     Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

73.     Defendants Von Zamft, Mitchell, Cooper, and Passmore misused the legal processes available to them as Assistant State Attorneys and investigators for a purpose other than that for which they were designed.

74.     Specifically, Defendants abused their investigative power by:

a. Using the criminal justice process to coerce and intimidate Ms. Pinder into providing testimony in a specific manner desired by the prosecution;

b. Threatening to prosecute Ms. Pinder for crimes she did not commit if she did not cooperate in the manner they demanded;

c. Improperly coordinating with incarcerated witnesses, including convicted murderers, to influence and manipulate witness testimony;

d. Attempting to manufacture the "unavailability" of a witness in direct violation of Florida Statute § 90.804(1);

e. Deploying investigators Cooper and Passmore to pressure witnesses into changing testimony; and

f. Deliberately using their prosecutorial authority to threaten, intimidate, and coerce compliance rather than to pursue justice.

g. Other ways to be discovered pending discovery,

75. Defendants had an ulterior motive in exercising these legal processes – specifically, to win a capital case at all costs rather than to seek justice, as confirmed by Judge Wolfson's finding that they had a "prosecutorial philosophy of winning at all costs."

76. Defendants' abuse of process was willful and deliberate, as evidenced by the recorded jail call, the retaliatory investigation opened against defense investigators, and the court's ultimate disqualification of both prosecutors from the case.

77. As a direct and proximate result of Defendants' abuse of process, Ms. Pinder has suffered damages, including:

a. Severe emotional distress;

b. Mental anguish;

c. Post-Traumatic Stress Disorder;

d. Loss of sleep;

e. Depression and anxiety;

f. Physical manifestations of psychological trauma including seizures;

g. Loss of income due to inability to work; and

h. Other psychological trauma requiring ongoing treatment.

WHEREFORE, Plaintiff demands judgment against Defendants Von Zamft, Mitchell, Cooper, and Passmore for compensatory damages, punitive damages, costs, and any other relief this Court deems just and proper.

**COUNT VI**
**CIVIL CONSPIRACY**
**AGAINST DEFENDANTS VON ZAMFT, MITCHELL,**
**COOPER, PASSMORE, AND RODRIGUEZ**

78.     Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

79.     Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez, together with others, including but not limited to convicted felon Latravis Gallashaw, entered into an agreement to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

80.     Specifically, Defendants conspired to:

a. Manipulate witness testimony through intimidation, threats, and coercion;

b. Threaten Ms. Pinder's safety and well-being to secure her testimony in a manner favorable to the prosecution;

c. Coordinate with incarcerated felons to amplify threats against Ms. Pinder;

d. Create circumstances where Ms. Pinder might be rendered "unavailable" as a witness;

e. Discredit and intimidate witnesses, including Anthony Fail, who corroborated Ms. Pinder's claims; and

f. Undermine Ms. Pinder's credibility through false characterizations of her motives and behavior.

81.     In furtherance of this conspiracy, the following overt acts were committed:

a. Defendant Von Zamft engaged in a recorded jail call with convicted murderer Latravis Gallashaw discussing making Ms. Pinder "unavailable";

b. Defendant Von Zamft attempted to arrange for Gallashaw to be in the prison courtyard with other witnesses, including Demetrius Jones and William Brown, for the purpose of coordinating testimony;

c. Defendants Von Zamft and Mitchell informed Ms. Pinder that convicted murderers would come after her if she did not cooperate;

d. Defendants Von Zamft and Mitchell threatened to jail and prosecute Ms. Pinder despite her having committed no crimes;

e. Defendants Cooper and Passmore were dispatched to pressure and intimidate Anthony Fail after he provided an affidavit supporting Ms. Pinder's claims;

f. Defendant Rodriguez provided testimony characterizing Ms. Pinder as opportunistic and dishonest to undermine her credibility; and

g. Defendants engaged in a continuous pattern of intimidation and harassment from 2022 through early 2024.

82.     As a direct and proximate result of the conspiracy and the acts done in furtherance of the conspiracy, Ms. Pinder has suffered damages, including but not limited to:

a. Severe emotional distress;

b. Mental anguish;

c. Post-Traumatic Stress Disorder;

d. Loss of sleep;

e. Depression and anxiety;

f. Physical manifestations of psychological trauma including seizures;

g. Loss of income due to inability to work; and

h. Other psychological trauma requiring ongoing treatment.

WHEREFORE, Plaintiff demands judgment against Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez for compensatory damages, punitive damages, costs, and any other relief this Court deems just and proper

### COUNT VII
### INVASION OF PRIVACY - INTRUSION UPON SECLUSION
### AGAINST DEFENDANTS VON ZAMFT, MITCHELL,
### COOPER, PASSMORE, AND RODRIGUEZ

83.    Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

84.    Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez intentionally intruded upon Ms. Pinder's solitude, seclusion, and private concerns in a manner that would be highly offensive to a reasonable person.

85.    Specifically, Defendants:

a. Created circumstances where Ms. Pinder had to live in constant fear and anxiety about her personal safety;

b. Used their governmental authority to intrude upon her peace of mind and sense of security;

c. Caused her to be unable to leave her home without fear for her safety;

d. Deployed investigators (Cooper and Passmore) to intimidate a witness who supported Ms. Pinder's claims;

e. Provided testimony (Rodriguez) that invaded Ms. Pinder's privacy by mischaracterizing her motives and behavior; and

f. Forced her to endure ongoing psychological surveillance and fear due to their threats.

g. Other acts to be uncovered pending discovery

86.    These intrusions were substantial, highly offensive, and would cause serious mental suffering and anguish to a reasonable person.

87.    The intrusions by Defendants were intentional and with knowledge that they would likely severely disrupt Ms. Pinder's private life and mental well-being.

88.    Ms. Pinder had a legitimate expectation of privacy and security in her daily life, free from threats and intimidation by state actors.

89.    As a direct and proximate result of Defendants' invasion of her privacy through intrusion upon seclusion, Ms. Pinder has suffered damages, including but not limited to:

a. Severe emotional distress;

b. Mental anguish;

c. Post-Traumatic Stress Disorder;

d. Loss of sleep;

e. Depression and anxiety;

f. Physical manifestations of psychological trauma including seizures;

g. Loss of income due to inability to work; and

h. Other psychological trauma requiring ongoing treatment.

WHEREFORE, Plaintiff demands judgment against Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez for compensatory damages, punitive damages, costs, and any other relief this Court deems just and proper.

### COUNT VIII
### INVASION OF PRIVACY - PUBLICITY GIVEN TO PRIVATE LIFE
### AGAINST DEFENDANTS VON ZAMFT, MITCHELL, COOPER, PASSMORE, AND RODRIGUEZ

90.    Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

91.    Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez gave publicity to matters concerning Ms. Pinder's private life in a manner that:

a. Would be highly offensive to a reasonable person; and

b. Is not of legitimate concern to the public.

92.    Specifically, Defendants:

a. Disclosed private information about Ms. Pinder's cooperation with law enforcement to convicted felon Latravis Gallashaw;

b. Shared details about Ms. Pinder's potential testimony and personal circumstances with individuals who had no legitimate need for such information;

c. Discussed the possibility of making Ms. Pinder "unavailable" with a convicted murderer;

d. Disseminated private information about Ms. Pinder to other witnesses, including Anthony Fail, as evidenced by their efforts to intimidate him when he provided an affidavit supporting her claims;

e. Portrayed Ms. Pinder in a false light through Rodriguez's testimony characterizing her as opportunistic and dishonest; and

f. Created a situation where Ms. Pinder's private information and safety concerns became the subject of court proceedings and public records.

93.     The information shared by Defendants was private and not of legitimate public concern.

94.     The disclosure of this private information in the manner conducted by Defendants was highly offensive and would cause serious mental suffering and anguish to a reasonable person.

95.     As a direct and proximate result of Defendants' invasion of her privacy through giving publicity to private facts, Ms. Pinder has suffered damages, including but not limited to:

a. Severe emotional distress;

b. Mental anguish;

c. Post-Traumatic Stress Disorder;

d. Loss of sleep; e. Depression and anxiety;

f. Physical manifestations of psychological trauma including seizures;

g. Loss of income due to inability to work; and

h. Other psychological trauma requiring ongoing treatment.

WHEREFORE, Plaintiff demands judgment against Defendants Von Zamft, Mitchell, Cooper, Passmore, and Rodriguez for compensatory damages, punitive damages, costs, and any other relief this Court deems just and proper.

## COUNT IX
## NEGLIGENT HIRING, RETENTION, AND SUPERVISION
## AGAINST DEFENDANT STATE OF FLORIDA

96.     Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

97.     Defendant State of Florida had a duty to exercise reasonable care in the hiring, retention, and supervision of its employees, including Defendants Von Zamft, Mitchell, Cooper, and Passmore.

98.     Defendant State of Florida knew or should have known that Defendants Von Zamft, Mitchell, Cooper, and Passmore were unfit to serve in their respective roles without additional supervision and training regarding appropriate witness interactions and ethical obligations.

99.     Defendant State of Florida either knew or should have known that Defendants Von Zamft, Mitchell, Cooper, and Passmore displayed deficiencies making them either unfit to serve in their positions and/or employees requiring additional supervision, including but not limited to:

a. A pattern of witness manipulation and intimidation;

b. Improper coordination of witness testimony;

c. Discovery violations and failures to disclose exculpatory evidence; and

d. A "prosecutorial philosophy of winning at all costs" rather than seeking justice.

100.     Based on the information Defendant State of Florida either knew or should have known about Defendants Von Zamft, Mitchell, Cooper, and Passmore, it was reasonably foreseeable that they would commit acts or omissions that would cause harm to witnesses, including Ms. Pinder.

101.     Defendant State of Florida breached its duty to Ms. Pinder in the following ways:

a. By hiring Defendants Von Zamft, Mitchell, Cooper, and Passmore when it either knew or should have known about their propensity for witness manipulation and intimidation;

b. By retaining Defendants Von Zamft, Mitchell, Cooper, and Passmore when it either knew or should have known about their pattern of misconduct and ethical violations;

c. By failing to properly supervise Defendants Von Zamft, Mitchell, Cooper, and Passmore when it either knew or should have known about their improper witness coordination practices and "win at all costs" philosophy;

d. By failing to implement adequate training, policies, and procedures to prevent prosecutors and investigators from threatening witnesses and coordinating witness testimony; and

e. Additional acts of negligence not yet discovered.

102.    It was unreasonable for Defendant State of Florida to hire, retain, and fail to properly supervise Defendants Von Zamft, Mitchell, Cooper, and Passmore given the information it knew or should have known about them.

103.    As a direct and proximate result of Defendant State of Florida's negligent breach of its duty to Ms. Pinder, she has suffered damages, including but not limited to:

a. Severe emotional distress;

b. Mental anguish;

c. Post-Traumatic Stress Disorder;

d. Loss of sleep;

e. Depression and anxiety;

f. Physical manifestations of psychological trauma including seizures;

g. Loss of income due to inability to work; and

h. Other psychological trauma requiring ongoing treatment.

WHEREFORE, Plaintiff demands judgment against Defendant State of Florida for compensatory damages, costs, and any other relief this Court deems just and proper.

**COUNT X**
**VICARIOUS LIABILITY**
**AGAINST DEFENDANT STATE OF FLORIDA**

104.    Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

105.     At all times material to this complaint, Defendants Von Zamft, Mitchell, Cooper, and Passmore were employees of Defendant State of Florida acting within the course and scope of their employment.

106.     The actions of Defendants Von Zamft, Mitchell, Cooper, and Passmore in intimidating Ms. Pinder and threatening to make her "unavailable" as a witness were committed while they were engaged in their duties working on the resentencing of Corey Smith.

107.     The actions of Defendants Von Zamft, Mitchell, Cooper, and Passmore were not taken as part of their core prosecutorial functions intimately associated with the judicial phase of the criminal process, but rather as part of investigative and administrative functions for which no absolute immunity applies.

108.     Defendant State of Florida is vicariously liable for the tortious actions of its employees, Defendants Von Zamft, Mitchell, Cooper, and Passmore, which were committed during the course and scope of their employment.

109.     As a direct and proximate result of the actions of Defendants Von Zamft, Mitchell, Cooper, and Passmore, for which Defendant State of Florida is vicariously liable, Ms. Pinder has suffered damages, including but not limited to:

a. Severe emotional distress;

b. Mental anguish;

c. Post-Traumatic Stress Disorder;

d. Loss of sleep;

e. Depression and anxiety;

f. Physical manifestations of psychological trauma including seizures;

g. Loss of income due to inability to work; and

h. Other psychological trauma requiring ongoing treatment.

WHEREFORE, Plaintiff demands judgment against Defendant State of Florida for compensatory damages, costs, and any other relief this Court deems just and proper.

### COUNT XI
### NEGLIGENT HIRING, RETENTION, AND SUPERVISION
### AGAINST DEFENDANT MIAMI-DADE COUNTY

110.    Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

111.    Defendant County had a duty to exercise reasonable care in the hiring, retention, and supervision of its employees, including Defendant Rodriguez.

112.    Defendant County knew or should have known that Defendant Rodriguez was unfit to serve in his position without additional supervision and training regarding appropriate witness interactions and ethical obligations.

113.    Defendant County either knew or should have known that Defendant Rodriguez displayed deficiencies making him either unfit to serve in his position and/or an employee requiring additional supervision, including but not limited to:

a. A pattern of witness manipulation and intimidation;

b. Acting as a "handler" for witnesses in a manner that created undue influence; and

c. A willingness to provide testimony that falsely characterized witnesses to serve prosecutorial goals rather than truth-seeking.

d. Additional acts to be determined through discovery

114.    Based on the information Defendant County either knew or should have known about Defendant Rodriguez, it was reasonably foreseeable that he would commit acts or omissions that would cause harm to witnesses, including Ms. Pinder.

115.    Defendant County breached its duty to Ms. Pinder in the following ways:

a. By hiring Defendant Rodriguez when it either knew or should have known about his propensity for witness manipulation and intimidation;

b. By retaining Defendant Rodriguez when it either knew or should have known about his pattern of misconduct and ethical violations;

c. By failing to properly supervise Defendant Rodriguez when it either knew or should have known about his improper witness handling practices and willingness to undermine witness credibility for improper purposes;

d. By failing to implement adequate training, policies, and procedures to prevent its officers from improperly handling witnesses; and

e. Additional acts of negligence not yet discovered.

116.    It was unreasonable for Defendant County to hire, retain, and fail to properly supervise Defendant Rodriguez given the information it knew or should have known about him.

117.    As a direct and proximate result of Defendant County's negligent breach of its duty to Ms. Pinder, she has suffered damages, including but not limited to:

    a. Severe emotional distress;

    b. Mental anguish;

    c. Post-Traumatic Stress Disorder;

    d. Loss of sleep;

    e. Depression and anxiety;

    f. Physical manifestations of psychological trauma including seizures;

    g. Loss of income due to inability to work; and

    h. Other psychological trauma requiring ongoing treatment.

WHEREFORE, Plaintiff demands judgment against Defendant County for compensatory damages, costs, and any other relief this Court deems just and proper.

**COUNT XII**
**VICARIOUS LIABILITY**
**AGAINST DEFENDANT MIAMI-DADE COUNTY**

118.    Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

119.    At all times material to this complaint, Defendant Rodriguez was an employee of Defendant Miami-Dade Police Department acting within the course and scope of his employment.

120.    The actions of Defendant Rodriguez in providing false testimony to discredit Ms. Pinder and undermine her allegations of prosecutorial misconduct were committed while he was engaged in his duties as a detective working on the Corey Smith case.

121.     The actions of Defendant Rodriguez were not taken as part of any function for which qualified immunity applies, but rather constituted intentional acts to discredit a witness and shield prosecutorial misconduct from scrutiny.

122.     Defendant County is vicariously liable for the tortious actions of its employee, Defendant Rodriguez, which were committed during the course and scope of his employment.

123.     As a direct and proximate result of the actions of Defendant Rodriguez, for which Defendant County is vicariously liable, Ms. Pinder has suffered damages, including but not limited to:

      a. Severe emotional distress;

      b. Mental anguish;

      c. Post-Traumatic Stress Disorder;

      d. Loss of sleep;

      e. Depression and anxiety;

      f. Physical manifestations of psychological trauma including seizures;

      g. Loss of income due to inability to work; and

      h. Other psychological trauma requiring ongoing treatment.

WHEREFORE, Plaintiff demands judgment against Defendant County for compensatory damages, costs, and any other relief this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Tricia Geter Pinder, respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief of compensatory damages, punitive damages, reasonable attorneys' fees and costs and other applicable law and such other further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Tricia Geter Pinder, hereby demands a trial by jury on all issues so triable.